RICHARD O'CONNELL *v.* DAWN O'CONNELL
(AC 26816)

Flynn, C. J., and DiPentima and Lavine, Js.

Argued December 12, 2006—officially released June 5, 2007

*Dawn O'Connell Llaser*, pro se, the appellant (defendant).

*Opinion*

LAVINE, J. The pro se defendant, Dawn O'Connell,[1] appeals from two postdissolution judgments of the trial court. The defendant appealed first from the judgment

---

[1] The defendant has remarried and is now known as Dawn O'Connell Llaser.

of the court finding her in contempt for wilful failure to comply with various orders with respect to child support and medical expenses of the parties' child. The defendant claims that the court abused its discretion by finding her in wilful contempt because (1) the contempt finding was based on ambiguous financial orders, (2) the motion for contempt filed by the plaintiff, Richard O'Connell, failed to comply with Practice Book § 25-27, (3) the court denied her repeated requests for a continuance and (4) the plaintiff intentionally misled the court. The defendant later amended her appeal to include the judgment of the court rendered when it denied her motion to vacate an order it issued on April 15, 2005.[2] We affirm the judgments of the trial court.

We begin our resolution of this appeal by setting forth the relevant facts and procedural history. The marriage of the defendant and the plaintiff was dissolved on September 25, 1992. The parties had one minor child during their marriage. The judgment of dissolution awarded the parties joint custody of the child and provided that the child's principal residence would be with the defendant, with the plaintiff paying her child support. The judgment of dissolution also provided that the parties would share equally the cost of all unreimbursed medical expenses for the child.

On February 4, 2004, the court, *Hon. John R. Caruso*, judge trial referee, granted the plaintiff's motion to modify the custody arrangement and ordered the child's primary residence to be with the plaintiff, temporarily

---

[2] In the motion to vacate, the defendant challenged the propriety of the court's April 15, 2005 order, which was issued in response to the plaintiff's motion for clarification and order postjudgment. We decline to address all claims relating to the denial of the motion to vacate, as the defendant never moved for an articulation of the judgment; accordingly, there is an inadequate record for us to review whether the court's denial constituted an abuse of discretion. See *Jezierny* v. *Jezierny*, 99 Conn. App. 158, 160–61, 912 A.2d 1127 (2007).

suspending his child support obligation. On March 10, 2004, the parties stipulated that the defendant was to pay the plaintiff $86 per week in child support. Also on that date, the defendant filed a motion for contempt, claiming that the plaintiff had failed to pay child support for some of the time that the child had resided with her. On April 20, 2004, she filed a similar motion updating the amount she claimed was owed to her.

On May 10, 2004, Judge Caruso held a hearing on various motions, including the defendant's contempt motions.[3] On November 18, 2004, Judge Caruso issued a memorandum of decision resolving the issues raised at the May 10, 2004 hearing, in which he made three findings relevant to this appeal. First, he found that "the defendant should have paid and should be paying as current support $134 per week." Second, he found that "[i]f the defendant has continued to pay the plaintiff $86 per week, the child support arrearage due the plaintiff through the payment date November 17, 2004, amounts to $2532, and after deducting the arrearage due the [defendant] of $1845, there is a net due the plaintiff of $659,[4] which the defendant is ordered to pay the plaintiff $27 per week in addition to the current order of $134 per week." Third, Judge Caruso ordered the defendant to pay the plaintiff $295 at a rate of $25 per week for unreimbursed medical expenses.

On July 8, 2005, the plaintiff filed a motion for contempt, claiming that the defendant had violated Judge Caruso's November 18, 2004 orders, as she had failed to pay (1) $27 per week, as ordered on the child support arrearage of $659, (2) $25 per week, as ordered on the

---

[3] The defendant claims that Judge Caruso modified her child support obligation to $134 per week, an amount that was in line with the child support guidelines, given the parties' financial situations. The record indicates that the court issued such an order on that date, but the defendant has not provided us with a transcript of the hearing.

[4] We note the arithmetic error, but it was not challenged by the defendant.

unreimbursed medical expense arrearage of $295 and (3) some of her child support payments of $134 per week. The plaintiff also claimed that the defendant had violated the original judgment of dissolution because she had failed to pay one half of the child's unreimbursed medical expenses that had accrued subsequent to Judge Caruso's orders.

On July 19, 2005, the court, *Hon. Herbert Barall,* judge trial referee, held a hearing on the plaintiff's contempt motion. At the hearing, the plaintiff testified that the defendant had paid neither of the arrearages ordered by Judge Caruso. He also testified that she had not paid an additional $655 for unreimbursed medical expenses or five and one-half weeks of child support since Judge Caruso's order. The defendant appeared pro se at the hearing. She asked several times throughout the hearing for a continuance, as she wanted to present additional evidence to the court. Judge Barall denied her requests.

Judge Barall found the defendant in contempt of both Judge Caruso's November 18, 2004 order and the judgment of dissolution. With regard to the November 18, 2004 order, Judge Barall found that the defendant wilfully had failed to pay (1) the child support arrearage of $659, (2) the unreimbursed medical expense arrearage of $295 and (3) five and one-half weeks of her child support obligation of $134 per week, totaling $737. As to the judgment of dissolution, Judge Barall found that the defendant wilfully had failed to pay one half of the child's recent unreimbursed medical expenses, amounting to $655. The defendant appealed from the judgment of contempt to this court on August 5, 2005. On November 8, 2005, the defendant filed a motion for articulation of the contempt finding. Judge Barall filed an articulation on November 16, 2005. Additional facts will be set forth as necessary.

Before turning to the merits of the defendant's claims, we set forth the legal principles that guide our resolution of this appeal and identify the applicable standard of review. "A finding of contempt is a question of fact, and our standard of review is to determine whether the court abused its discretion in [finding] that the actions or inactions of the [alleged contemnor] were in contempt of a court order. . . . To constitute contempt, a party's conduct must be wilful. . . . Noncompliance alone will not support a judgment of contempt. . . . [T]he credibility of witnesses, the findings of fact and the drawing of inferences are all within the province of the trier of fact. . . . We review the findings to determine whether they could legally and reasonably be found, thereby establishing that the trial court could reasonably have concluded as it did." (Internal quotation marks omitted.) *Gil* v. *Gil*, 94 Conn. App. 306, 311, 892 A.2d 318 (2006). We now address each of the defendant's arguments in turn.

I

The defendant's first claim is that the court abused its discretion in finding her in wilful contempt of the November 18, 2004 order because that finding was based on Judge Caruso's allegedly ambiguous financial orders. First, the defendant claims that the child support arrearage order was ambiguous because Judge Caruso miscalculated the amount due. Second, the defendant claims that Judge Caruso ordered her to pay the plaintiff $295 for unreimbursed medical expenses at a rate of $25 per week but never specified when the arrearage was to be paid. We conclude that the court's finding of contempt was not an abuse of discretion.

In *Sablosky* v. *Sablosky*, 258 Conn. 713, 784 A.2d 890 (2001), our Supreme Court held that a finding of wilfulness as a predicate to a judgment of contempt of court is not barred, as a matter of law, by the fact that

the terms of the judgment involved are ambiguous. Id., 715. The court stated that "[s]uch ambiguity is merely one of the factors for the trial court to take into consideration in exercising its discretion regarding a finding of wilfulness." Id., 723. Moreover, the court reiterated the well established principle that "where there is an ambiguous term in a judgment, a party must seek a clarification upon motion rather than resort to self-help." Id., 720; see also *Mulholland* v. *Mulholland*, 229 Conn. 643, 649, 643 A.2d 246 (1994) ("a party has a duty to obey a court order however erroneous the action of the court may be" [internal quotation marks omitted]). "A different conclusion would not only frustrate clearly defined public policy regarding the parental obligation to support minor children . . . but it also would encourage parties to refrain from seeking clarifications of ambiguous court orders. The doors of the courthouse are always open; it is incumbent upon the parties to seek judicial resolution of any ambiguity in the language of judgments." (Citation omitted; internal quotation marks omitted.) *Sablosky* v. *Sablosky*, supra, 722.

Moreover, "[t]he fact that [a party] exercise[s] *self-help* when he was not entitled to do so . . . by disobeying the court's order without first seeking a modification [is] a sufficient basis for the trial court's contrary exercise of discretion. The court [is] entitled to determine that to exonerate the [contemnor] would be an undue inducement to litigants' exercise of *self-help*." (Emphasis in original; internal quotation marks omitted.) Id., 719–20.

Judge Barall set forth in detail the grounds for the contempt finding in his articulation of the July 19, 2005 judgment. In finding the defendant in contempt for failure to pay the child support arrearage order of $659, the court stated that "the defendant's testimony as well as . . . a letter from the defendant to the plaintiff clearly indicated that *she knew what the order was*

*but did not pay it because she disagreed with Judge Caruso's decision on her claim that the plaintiff actually owed her money."* (Emphasis added.) Likewise, as to the order that the defendant pay the plaintiff $134 per week in child support, Judge Barall stated that the "defendant clearly *knew her obligation but held back money, intentionally claiming again money due her in opposition to Judge Caruso's finding.* The $134 per week support amount was an agreed figure. . . . [The defendant] acknowledged two weeks arrearage in testimony, and three and one-half weeks in her letter . . . . The Judge Caruso decision was not appealed. The defendant was obligated to follow it. There was no claim that she could not pay it. The court found the plaintiff more credible and found that the defendant did not pay five and one-half weeks of the child support order . . . ." (Emphasis added). We conclude that the court's finding of contempt was legally reasonable and supported by the record.[5]

[5] The defendant has argued that Judge Caruso's child support arrearage order was ambiguous because the language, "[i]f the defendant has continued to pay the plaintiff $86 per week," is "conditional and open to more than one possible meaning . . . ." Given the language of the order, this is not an unreasonable argument. Regardless, the defendant's principal claim is not that she failed to obey the order because she did not understand it. Instead, she has maintained continuously that she did not pay the ordered child support arrearage and decided to suspend child support payments because she believed that Judge Caruso had calculated her arrearage incorrectly. She argues that had Judge Caruso calculated the amount she had not paid in child support properly, she would have been entitled to a credit when subtracting the plaintiff's arrearage from that amount. Accordingly, without the court's approval, she decided to withhold sums owed to the plaintiff.

"[T]he decision to allow or disallow credit lies within the sound discretion of the trial court. . . . The mere fact that [a party] . . . believe[s] that he was entitled to . . . a credit does not excuse his nonpayment of support, nor does it constitute an abuse of the court's discretion to hold him in contempt." (Citation omitted; internal quotation marks omitted.) *Lawrence v. Lawrence*, 92 Conn. App. 212, 217, 883 A.2d 1260 (2005). Consequently, despite the defendant's claims that Judge Caruso's order was ambiguous and that she believed she was entitled to a credit, the fact remains that she never sought clarification or appealed from that judgment.

Likewise, we are not persuaded by the defendant's argument that finding her in contempt of the November 18, 2004 order requiring her to pay the plaintiff $295 for unreimbursed medical expenses was an abuse of discretion. The defendant admitted at the contempt hearing that she had been ordered to pay the plaintiff $295 in unreimbursed medical expenses in the November 18, 2004 order and that she had not paid the amount. We have reviewed the order itself and conclude that Judge Barall did not abuse his discretion when he found the defendant in wilful contempt, despite her claim that she did not understand that she was supposed to start making payments on the arrearage immediately.

II

The defendant next claims that the court abused its discretion in finding her in contempt because the plaintiff did not specify the dates and amounts due in his motion for contempt as required pursuant to Practice Book § 25-27.[6] Specifically, the defendant asserts that because the dates and amounts due were not identified in the plaintiff's motion, her due process rights were violated, as she was unable to provide the court with specific evidence that would prove that she was not in contempt.

"Due process of law requires that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation." (Internal quotation marks

---

[6] Practice Book § 25-27 (a) provides in relevant part that "[e]ach motion for contempt must state (1) the date and specific language of the order of the judicial authority on which the motion is based; (2) the specific acts alleged to constitute the contempt of that order, including the amount of any arrears claimed due as of the date of the motion or a date specifically identified in the motion . . . ."

omitted.) *Shapiro* v. *Shapiro*, 80 Conn. App. 565, 569, 835 A.2d 1049 (2003). "Notice, to comply with due process requirements, must be given sufficiently in advance of scheduled court proceedings so that reasonable opportunity to prepare will be afforded, and it must set forth the alleged misconduct with particularity." (Internal quotation marks omitted.) *In re Donna M.*, 33 Conn. App. 632, 638, 637 A.2d 795, cert. denied, 229 Conn. 912, 642 A.2d 1207 (1994).

The plaintiff's motion for contempt specifically referenced the defendant's failure to pay both the child support arrearage and medical expenses that were ordered by Judge Caruso on November 18, 2004, indicating the amounts due. It also claimed that the defendant refused to share equally the child's unreimbursed medical expenses as required by the judgment of dissolution. We conclude that the motion sufficiently placed the defendant on notice as to what actions and inactions would be the subject of the contempt hearing and, accordingly, satisfied the requirements of due process.[7]

### III

The defendant next claims that the court abused its discretion in denying her repeated requests for a continuance of the contempt hearing. We are not persuaded.

"A motion for continuance is addressed to the discretion of the trial court, and its ruling will not be overturned absent a showing of a clear abuse of that

---

[7] We note that the plaintiff's motion did not indicate specifically the amount due for unreimbursed medical expenses that had accumulated subsequent to Judge Caruso's orders. The defendant failed to object, however, at the contempt hearing when the plaintiff offered evidence of these expenses. See *Tedesco* v. *Stamford*, 215 Conn. 450, 461, 576 A.2d 1273 (1990) ("[t]he proper way to attack a variance between pleadings and proof is by objection at the trial to the admissibility of that evidence which varies from the pleadings, and failure to do so at the trial constitutes a waiver of any objection to such variance" [internal quotation marks omitted]), on remand, 24 Conn. App. 377, 588 A.2d 656 (1991), rev'd on other grounds, 222 Conn. 233, 610 A.2d 574 (1992).

discretion. . . . The burden of proof is upon the party claiming an abuse of discretion. . . . We are especially hesitant to find an abuse of discretion when the motion is made on the day of trial. . . . Every reasonable presumption in favor of the proper exercise of the trial court's discretion will be made." (Internal quotation marks omitted.) *Kennedy* v. *Kennedy*, 83 Conn. App. 106, 109–10, 847 A.2d 1104, cert. denied, 270 Conn. 915, 853 A.2d 530 (2004). "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." (Internal quotation marks omitted.) *Kelly* v. *Kelly*, 85 Conn. App. 794, 799, 859 A.2d 60 (2004).

In the present case, the defendant asked Judge Barall for a continuance several times in the middle of the contempt hearing so that she would have the opportunity to consult with an attorney and come back to the court with cancelled checks, which allegedly would prove that she did not owe the arrearage attributed to her. The transcript of the contempt hearing indicates that the court denied the defendant's requests for a continuance because the defendant was given adequate notice of the hearing and she asked for the continuance only after the hearing was well underway, when she was informed that the evidence she wanted to present to the court was inadmissible.[8] Given that the defendant had a meaningful opportunity to present testimony and cross-examine the plaintiff with regard to whether she

---

[8] The record reveals that the defendant brought a log with her to court in which she claimed to have recorded the payments she had made to the plaintiff. Judge Barall informed her that the log was inadmissible as evidence. Consequently, she wanted to present cancelled checks to the court. "[A]lthough we allow pro se litigants some latitude, the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law." (Internal quotation marks omitted.) *Rivnak* v. *Rivnak*, 99 Conn. App. 326, 332 n.4, 913 A.2d 1096 (2007).

had paid the arrearage owed, we conclude that the court's denials of her requests for a continuance were not arbitrary and were not an abuse of discretion.

IV

The defendant also challenges the court's finding her in contempt of the judgment of dissolution, which required her to pay one half of the child's unreimbursed medical bills and the order that she reimburse the plaintiff $655 for bills that accrued subsequent to the November 18, 2004 order. The defendant alleges that this contempt finding was improper because it was based on the plaintiff's false testimony and fraudulently submitted medical reimbursement claims. We decline to address this argument, as the defendant did not raise it adequately at the contempt hearing. See *Histen* v. *Histen*, 98 Conn. App. 729, 737, 911 A.2d 348 (2006).

The judgments are affirmed.

In this opinion the other judges concurred.